UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| GREGORY D. BARREN, SR., | ) | Case No.: 2:11-cv-650-RLH-CWH |
| | ) | |
| Plaintiff, | ) | **O R D E R** |
| | ) | |
| vs. | ) | (Plf.'s Motions in Limine - #95, #96; Def.'s Motion for Summary Judgment - #103; Plf.'s Cross-Motion for Summary Judgment - #107) |
| | ) | |
| DAVID ROGER, OFFICER T. ROBINSON; OFFICER R. KENT; OFFICER D. SHANE, | ) | |
| | ) | |
| Defendants. | ) | |

      Before the Court is Defendants Terry Robinson, Raymon Kent, and Donald Shane's (collectively "Officers") **Motion for Summary Judgment** (#103, filed Aug. 18, 2014), Plaintiff Gregory D. Barren, Sr.'s **Cross-Motion for Summary Judgment** (#107, filed Aug. 25, 2014), and Plaintiff's related **Motions in Limine** (#95, 96, both filed on July 29, 2014). The Court has also considered the respective oppositions and replies. (#101, 102, 105, 106, 108, 110, 111). For the reasons discussed below, the Court grants Defendants motion and denies Plaintiff's motions.

**BACKGROUND**

This case is a civil rights action based on an alleged unlawful arrest in violation of the Fourth Amendment. Plaintiff's arrest stems from events that took place on June 10, 2010. The following facts are not in dispute.

At 1:28 p.m, a man identified as Patrick called Las Vegas Metropolitan Police Department (LVMPD) Dispatch and reported that a woman called him and that she was in trouble at 5000 Cannon Avenue. Patrick provided the operator with the woman's number, (Dkt. #102, Mot. Ex.B). Thereafter, the operator contacted Susie Bush (Ms. Bush). Ms. Bush requested that Dispatch send officers over to help her because Plaintiff, Gregory D. Barren, Sr., had earlier hit her with a stick, she was trying to leave his home, and that she was afraid of the Plaintiff. (Dkt. #102, Mot. Ex.B). Ms. Bush indicated that Plaintiff was no longer at the residence but she was afraid to leave and again requested that Dispatch send an officer over to assist her in leaving.(Dkt. #102, Mot. Ex.B). As a result of the 9-1-1 call, LVMPD officers were dispatched to Plaintiff's home. En-route to the residence the officers were informed that Ms. Bush was hit with a stick, Plaintiff locked her in the residence, she was fearful that Plaintiff would hurt her for calling the police, and was having a panic attack. (Dkt. # 103, Mot. Ex. D).

Upon arrival, Ms. Bush reported that Plaintiff hit her with a stick in the thigh, strangled her, and struck her on the right side of her head. (Dkt. # 103, Mot. Ex. H). Plaintiff denied that he hit Ms. Bush and appeared uninjured. Ms. Bush had injuries including bruising on her face, marks on her neck, and swelling on her leg where Plaintiff allegedly hit her. Defendants located and impounded a wooden stick that Ms. Bush alleged Plaintiff used to hit her. (Dkt. # 103, Mot. Ex. L).

Thereafter, Plaintiff was arrested and charged with domestic battery, kidnapping, and coercion. Plaintiff's preliminary hearing was initially set for July 1, 2010; however, Ms. Bush failed to appear and the matter was continued. (Dkt. #107/108, Cross-Mot. Ex. F). Again on July

15 and July 29, 2010, Ms. Bush failed to appear and on August 5, 2010, the charges were dismissed against Plaintiff. (Dkt. #107/108, Cross-Mot. Ex. F).

Plaintiff filed his complaint on August 3, 2011, alleging that the Defendants lacked probable cause to arrest him for domestic violence. (Dkt. # 3). Upon Officers' motion, the Court dismissed the complaint without prejudice for failure to state a claim because Plaintiff named the Officers only in their official capacities while failing to allege a municipal policy or custom. (Dkt. #19). Plaintiff sought to have the case "reinstated," which this Court construed as a motion for reconsideration. (Dkt. #21). The Court denied Plaintiff's reconsideration motion and Plaintiff appealed that denial. (Dkt. #24, 26). The Ninth Circuit found that this Court properly dismissed Plaintiff's Complaint because Plaintiff named the Officers only in their official capacities while failing to allege a municipal policy or custom. (Dkt. #37). However, reasoning that "it would not be apparent to a pro se litigant that dismissal without prejudice would allow amendment," the Ninth Circuit remanded to this Court to consider Plaintiff's "request for reinstatement as a request for leave to amend." (Dkt. #37). On remand, applying the amendment standard, the Court readily allowed Plaintiff to file an amended complaint. (Dkt. # 46).

Plaintiff's amended complaint stated a claim under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment. Defendants have moved for summary judgment arguing there was probable cause to arrest Plaintiff and alternatively, that they are entitled to qualified immunity. Plaintiff has cross-moved for summary judgment challenging some of Defendants' evidence as inadmissible and arguing the admissible evidence showed Defendants violated his constitutional rights.

**LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate "where the Court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

3

as a matter of law.'" Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c). Moreover, *pro se* litigants are bound by the same rules

1 of procedure as other litigants. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). To be sure,
2 the Ninth Circuit has held that *pro se* litigants are not entitled to lenient evidentiary standards for
3 the purposes of summary judgment motions. *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (holding
4 "[f]irst and foremost is that *pro se* litigants in the ordinary civil case should not be treated more
5 favorably than parties with attorneys of record.").

6       Summary judgment for a defendant is appropriate when the plaintiff "fails to make
7 a showing sufficient to establish the existence of an element essential to his case, and on which he
8 will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where parties submit
9 cross-motions for summary judgment, the court must consider each party's evidence, regardless
10 under which motion the evidence is offered. *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132,
11 1136 (9th Cir. 2001); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed.
12 Prac. & Pro. § 2720, at 335-36 (3d ed. 1998) (stating: "The court must rule on each party's motion
13 on an individual and separate basis, determining, for each side, whether a judgment may be entered
14 in accordance with the Rule 56 standard.").

## ANALYSIS

**1.     Plaintiff's Motions in Limine - Admissibility of Evidence**

Although these documents are presented to the Court as Motions in Limine, they are more properly construed as challenges to evidence presented in Defendants' motion for summary judgment.  The Court notes that Plaintiff should have raised these challenges in his opposition to the Defendants' motion and the court will address them as a predicate to its summary judgment analysis. Plaintiff argues that consideration of the 911-phone call and Defendants' arrest and domestic violence reports violate the Confrontation Clause[1] and the call and reports are

---

[1] As the Confrontation Clause has no applicability in civil cases, *United States v. Alisal Water Corp.*, 431 F.3d 642, 658 (9th Cir. 2005) and *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Court declines to address this argument.

AO 72
(Rev. 8/82)

otherwise inadmissible hearsay. Defendants argue Plaintiff's proffer of letters purportedly written by Susie Bush are irrelevant or otherwise inadmissible hearsay.

Hearsay is a statement "that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). One exception to the hearsay rule is a record of a regularly conducted activity, which may be admitted if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, . . . ; and
(E) neither the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted under this exception but that statements made by third persons under no business duty to report may not. *United States v. Sims*, 617 F.2d 1371, 1377 (9th Cir. 1980).

The 911-phone call is not hearsay because it is not offered for the truth of the matter asserted–substantive evidence that Plaintiff battered Ms. Bush– but rather that Ms. Bush told the officers he did.  Here, the 911-phone call is offered for a non-hearsay purpose, namely the totality of the circumstances and the facts within the Defendants' knowledge when arriving to the scene–specifically the effect Ms. Bush's statements had on the Defendants–in that they were dispatched to the scene. Thus, the 911-call is admissible for the limited purpose of establishing probable cause at the time of arrest.

The arrest and domestic violence reports are hearsay, but admissible for two reasons. First, the officers' own statements and observations in the reports are admissible under the record of a regularly conducted activity hearsay exception because (a) they were made by the officers, at or near the time of the arrest, (b) the reports were kept in the course of a regularly

conducted police department activity, (c) the police department had a regular practice of making these types of reports, (d) the officers are qualified witnesses and attested to these conditions, and (e) the source and method do not show a lack of trustworthiness. Second, with regard to the statements made by Ms. Bush contained within the police report, these statements do not fall within the exception because she had no business duty to report; however, her statements are also not hearsay because they are offered for a non-hearsay purpose, i.e. to show the totality of the circumstances and facts within the Defendants' knowledge. Thus, the reports are admissible.

In contrast, the letters purportedly written by Susie Bush are inadmissible for three equally important but distinct reasons. First, Plaintiff has not authenticated the letters, which is a prerequisite to admissibility. Second, even if authenticated, letters drafted after the arrest are not relevant to whether Defendants had probable cause to believe Plaintiff had committed a crime at the time of arrest. Finally, even if authenticated and relevant, the statements are hearsay not subject to any exception because they are offered to prove the truth of the matter asserted, i.e. that Ms. Bush "was in no way hurt, harmed, or said [anything] against" Plaintiff, that there was "a sad conspiracy against" Plaintiff, that Defendants "just about framed" Plaintiff, and that Plaintiff "did not do anything." (#96, Ex. 2, Ex. 3).

Thus, the Court finds the 911-phone call and Defendants' arrest and domestic violence reports are admissible and may be considered in deciding these motions, whereas the two letters purportedly written by Ms. Bush are inadmissible and may not be considered.

    2.    **Motions for Summary Judgment**

        a.    **Fourth Amendment Claim - Probable Cause**

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The Fourth Amendment, applied to

7

the states via the Fourteenth Amendment, guarantees a citizen's right to be free from "unreasonable searches and seizures." U.S. Const. Amend. IV. Reasonableness is the foundation of Fourth Amendment jurisprudence. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted). The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. *Illinois v. Rodriguez*, 497 U.S. 177 (1990).

Arrest without probable cause violates a person's Fourth Amendment Rights. *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997). Probable cause exists if, considering the totality of the circumstances, the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information, are sufficient to warrant a prudent man in believing that the defendant had committed a crime. *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999). Probable cause is "evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). As the name implies, probable cause deals with probabilities, which are not technical, but are rather "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Whether charges are later dismissed does not affect the determination of whether probable cause existed to support the arrest. *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1996).

Here, the Court's inquiry is whether the Defendants, at the moment of arrest, had probable cause to believe Plaintiff had committed a crime. At the time of the Plaintiff's arrest, the Defendants possessed the following information: (1) they were responding to a report of domestic violence by Ms. Bush; (2) upon arrival the Defendants observed that Ms. Bush had injuries to her face, neck, and thigh; (3) Ms. Bush reported that Plaintiff hit her with a stick, choked her, and struck her in the face and neck; and (4) Plaintiff was uninjured. The Court concludes that the totality of the circumstances, the information available to the officers from the 911-call and their own observations at the time of the arrest, are sufficient to warrant a prudent officer in believing that Plaintiff had committed a crime.

As a final matter, to the extent that Plaintiff asserts that Ms. Bush later recanted her story, such that it obviated Defendants' probable cause to arrest, this is irrelevant to the determination of whether the Defendants had probable cause at the time of the arrest. Accordingly, the court finds that the Defendants had probable cause for the arrest.

        **b.**        **Qualified Immunity**

As there was probable cause to support the arrest, the Court's inquiry is complete and Defendants are entitled to judgment as a matter of law. However, even if there was no probable cause, Defendants would still be entitled to qualified immunity.

Qualified immunity protects officers to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known at the time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection applies regardless of whether the officer's "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation omitted). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (citation omitted).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step evaluation of qualified immunity, which has also been adopted by the Ninth Circuit. *See, e.g., Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The court's first step is to make a constitutional inquiry by determining the following issue: "based upon the facts taken in the light most favorable to the party asserting the inquiry, did the officer's conduct violate a constitutional right?" *Johnson*, 340 F.3d at 791 (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)); *Saucier*, 533 U.S. at 201. Although the Court has already found Defendants had probable cause to arrest the Plaintiff, the Court will assume for the sake of argument, that Defendants' action did, in

fact, violate Plaintiff's Fourth Amendment right. Thus, the Court moves to the second step of the *Saucier* analysis.

The second step requires the court to determine whether the officer is entitled to qualified immunity. *Johnson*, 340 F.3d at 791–92. As part of its qualified immunity analysis, the court should consider whether the law governing the conduct was clearly established when the conduct occurred. *Robinson v. Solano County*, 278 F.3d 1007, 1012 (9th Cir. 2001) (en banc). If the right violated was clearly established, the court should also decide "whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Id.* at 201–02; *Saucier*, 533 U.S. at 201–05. In cases involving probable cause, the question is "whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original).

Nevada law has a mandatory arrest provision for suspected battery constituting domestic violence. Nev. Rev. Stat. § 171.137. That provision requires an officer to "arrest a person" if the officer "has probable cause to believe that the person to be arrested has, within the preceding 24 hours, committed a battery upon . . . a person with whom he or she has had or is having a dating relationship." Nev. Rev. Stat. § 171.137(1). One limited exception to the mandatory arrest provision is when an "officer has probable cause to believe that a battery . . . was a mutual battery," and that "one of the persons who allegedly committed a battery was the primary physical aggressor involved in the incident." *Id.* at § 171.137(2). In that case, the officer may arrest only the primary physical aggressor and "is not required to arrest any other person believed to have committed a battery during the incident." *Id.* To determine whether a person is a primary physical aggressor, the officer must consider: "prior domestic violence," "relative severity of the injuries inflicted," "potential for future injury," whether the battery was "committed in self-defense," and any other factors. *Id.* at § 171.137(2)(a-e).

Here, based on well-established Nevada law, it is reasonably arguable that there was probable cause for arrest. Again, as discussed at length above, when the Defendants were dispatched to Plaintiff's house based on a report of domestic violence, Ms. Bush was hysterical, reported that Plaintiff battered her, and her injuries were consistent with domestic battery. Moreover, Plaintiff does not proffer evidence that the battery was mutual or that the officers had any reason to believe that the battery was mutual. In fact, Plaintiff specifically admits that he never told the officers that Ms. Bush threatened him with a stick. (DKT. # 107-108, Cross-Mot. at 4.). In light of the above discussion and the fact that Nevada has a mandatory arrest provision in instances of domestic violence, the court concludes that reasonable officers could disagree as to the legality of the arrest such that the Defendants are entitled to qualified immunity. Therefore, summary judgment is justified on this basis as well.

For the foregoing reasons, Plaintiff's motion for summary judgment is denied.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' **Motion for Summary Judgment** (#103, filed Aug. 18, 2014) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's **Cross-Motion for Summary Judgment** (#107, Filed Aug. 25, 2014) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's **Motions in Limine** (#95, 96, both filed on July 29, 2014) are DENIED.

Dated: September 16, 2014.

_____
ROGER L. HUNT
United States District Judge